J-A21015-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| PAUL A. ARNAO | : | |
| | : | |
| Appellant | : | No. 839 EDA 2018 |

Appeal from the Judgment of Sentence October 4, 2017
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0000330-2016

BEFORE:  BOWES, J., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:                                    Filed: March 23, 2020

Paul A. Arnao appeals from the October 4, 2017 judgment of sentence following his convictions for aggravated assault, simple assault, possession of a firearm prohibited, possession with intent to deliver a controlled substance ("PWID"), possession of an instrument of crime, and possession of a controlled substance by a person not registered.  After careful review, we affirm.

The trial court aptly summarized the factual history of this case:

> Appellant was arrested in the aftermath of a 911 domestic violence call on the morning of January 4, 2016, just after midnight, to which Marcus Hook Police Officer Daniel Barnett responded at the location of 9th and Green Street in Marcus Hook, Delaware County, Pennsylvania.  On arrival there, Officer Barnett found the victim Darla Olson (the "victim") hysterical (on the porch of her mother's house) with reddened horizontal strangulation marks wrapped around her neck.  When asked what happened, the victim, over her crying and inability to speak after several minutes, said her boyfriend, Appellant, wrapped a yellow nylon rope around her neck and strangled her. Appellant lived in

a second-floor apartment in a separate home approximately fifty (50) feet from the victim's mother's home.

As to her physical appearance, Officer Barnett described long red marks on the side of her neck approximately one (1) to two (2) inches long. The marks appeared to Officer Barnett to be rope burns. . . . The victim also reported to Officer Barnett that Appellant is crazy, that he was probably watching from his apartment as they spoke. She said Appellant had firearms and he would shoot a police officer.

Officer Barnett was standing fifty (50) to seventy-five (75) feet from Appellant's apartment as he received this information from the victim. As he and other officers approached Appellant's apartment which was accessible by a flight of metal stairs, Officer Barnett did observe exterior surveillance cameras pointed at the stairs and entrance.

. . . .

As the officers approached the bottom of the staircase and encountered the surveillance cameras, they reconsidered possibly calling in a SWAT team to assist taking Appellant into custody but the door to Appellant's apartment swung open and he came walking out. Appellant complied with instructions to come down the stairs with his hands up to be taken into custody.

After Appellant was taken into custody, there was no discussion or questioning and Appellant was not Mirandized[1] at that point. As Appellant was taken into custody the apartment door remained open. Officer Crouse of the Marcus Hook Police Department escorted Appellant to a patrol car. Other officers conducted a protective sweep of Appellant's apartment.

Before entering the apartment, Officers Barnett, Hallman and Donnelly remained on the landing outside the apartment and were observing whatever they could before cautiously entering the apartment. From his vantage point outside the apartment, Officer Barnett testified he could plainly see a yellow rope consistent with the one described by the victim as used in the attack to choke her by Appellant.

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

Officer Barnett also testified he plainly smelled burnt marijuana. Officer Barnett testified the apartment was in disarray. He testified there were stray bullets scattered all over. There was a silver revolver hanging over the door in the living room and bedroom. The only space that was checked was behind a closet door. Thereafter, Officer Hallman remained stationed there at the apartment while an application for a search warrant was to be made by Officer Barnett.

Officer Barnett then confronted Appellant and told him he had two options, that he could consent to the search or officers were going to apply for a search warrant. Initially, Appellant refused to consent to the search. Thereafter, as Appellant was placed in the patrol car, he relented saying he didn't want to give police a hard time, and that he would consent to the search. At that point, Appellant was taken to the police station (a 30-second ride) where he was presented with the consent form to read and sign. . . . Once the form was signed, Officer Crouse remained with the defendant at the police station while Officer Barnett conducted the search.

During the search, officers seized the following: yellow twine rope, a silver revolver, a glass jar containing suspected marijuana, a brown ceramic jar which contained 3 clear glassine bags, two had a crystal-like substance that field-tested positive for methamphetamine, one baggie contained a clear crystal residue, a digital scale, four small notebooks with instructions on how to make crystal meth, tally sheets, a black safe and a black satchel containing a ski mask and gloves and an air soft rifle type gun, numerous rounds of live ammunition, as well as Appellant's identification . . . and two tool boxes containing lock picking tool sets.

Trial Court Opinion, 10/10/18, at 4-9 (cleaned up; internal citations omitted).

After a jury trial, Appellant was convicted of the aforementioned crimes and sentenced to an aggregate term of imprisonment of thirty to sixty years.[2] Appellant timely filed post-sentence motions, which were denied. Thereafter,

---

[2] Appellant was subject to third-strike sentencing. *See* 42 Pa.C.S. § 9714.

Appellant filed a timely notice of appeal. The trial court ordered Appellant to file a concise statement of errors pursuant to Pa.R.A.P. 1925(b), Appellant timely complied, and the trial court filed an opinion pursuant to Rule 1925(a).

Appellant has presented the following claims of error for our review:

1. The evidence was insufficient for the jury's verdict of guilty on the charge of aggravated assault as there was no evidence presented that Appellant attempted to create a substantial risk of death, *i.e.*, serious bodily injury to the victim.

2. The evidence was insufficient for the jury's verdict of guilty on the charge of person not to possess a firearm where the Commonwealth failed to establish the firearms found by the Marcus Hook Police Department was a firearm under the definition, rather an antique and that the firearms were not operable.

3. The evidence was insufficient for the jury's verdict of guilty on the charge of PWID where there was no evidence Appellant delivered any meth to anyone or that Appellant manufactured meth.

4. The trial court erred in denying Appellant's motion to suppress where the Commonwealth of Pennsylvania failed to establish the police had reasonable suspicion/probable cause to make a protective sweep of Appellant's residence and the alleged consent given to search the residence occurred while Appellant was in handcuffs and included entering a locked cabinet.

5. The jury's verdict on the charges of aggravated assault, PWID, and Person not to Possess a Firearm was against the weight of the evidence as the evidence showed Appellant did not assault the victim, did not sell drugs, and did not possess a firearm when he was ineligible to do so.

6. The trial court erred in allowing the inadmissible hearsay testimony of both Regina Scarpato (the victim's mother) and Officer Daniel Barnett regarding conversations with the victim both on the date of the incident of January 4, 2016, and

immediately prior to trial when the victim did not appear and/or testify at trial.

7. The District Attorney's Office failed to provide Appellant with discovery, specifically the videotape on the date of the incident from January 4, 2016, at the Marcus Hook Police Station which was previously requested from the District Attorney's Office following Appellant's initial arrest and the Commonwealth failed to provide a full and complete copy of the firearms expert's report as well as the drug expert's entire report, only several pages of the report.

8. The trial court erred in sentencing Appellant as a third-strike offender as Appellant was still serving a term of probation when he was arrested and charged with the second "alleged" strike and was never sentenced on the "second strike" as a second-strike offender.

Appellant's brief at 8-10 (cleaned up; issues renumbered).

Appellant's first three issues challenge the sufficiency of the evidence with respect to Appellant's convictions for aggravated assault, PWID, and person not to possess a firearm, respectively. **See** Appellant's brief at 30-40. We will address these claims *seriatim*.

Our Supreme Court has discussed our standard and scope of review in this context as follows: "[W]ith respect to our sufficiency review, our standard of review is *de novo*, however, our scope of review is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner." **Commonwealth v. Rushing**, 99 A.3d 416, 420-21 (Pa. 2014). We also note at the outset that "the Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt relying wholly

on circumstantial evidence," and that "[b]oth direct and circumstantial evidence must be considered equally when assessing the sufficiency of the evidence." *Commonwealth v. Davalos*, 779 A.2d 1190, 1193 (Pa.Super. 2001). Finally, "any doubt about the defendant's guilt is to be resolved by the fact[-]finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." *Commonwealth v. Rodriguez*, 141 A.3d 523, 525 (Pa.Super. 2016).

The Commonwealth charged Appellant pursuant to the attempt provision of the aggravated assault statute. *See* 18 Pa.C.S. § 2702(a)(1). A person is guilty under this subsection if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life . . . ." *Id*. Since the victim did not ultimately suffer a "serious bodily injury," defined at 18 Pa.C.S. § 2301 as an injury that, *inter alia*, "creates a substantial risk of death," the Commonwealth is required to prove that Appellant possessed the specific intent to cause such an injury. *See Commonwealth v. Everett*, 596 A.2d 244, 245 (Pa.Super. 1991). In this context, "[a] person acts intentionally with respect to a material element of the offense when . . . it is his conscious object to engage in conduct of that nature or to cause such a result." *Id*. (citing 18 Pa.C.S. § 302(b)(1)(i)).

Appellant asserts that the Commonwealth has presented insufficient evidence of his intent to cause serious bodily injury to the victim. *See*

Appellant's brief at 31.  Viewing the evidence in the light most favorable to the Commonwealth, we must disagree.

Appellant emphasizes throughout his argument regarding aggravated assault that there is a lack of "direct evidence" regarding his intent to cause serious bodily injury.  **See** Appellant's brief at 31-32.  However, there was ample **circumstantial** evidence adduced by the Commonwealth at trial bespeaking Appellant's attempt to strangle the victim by hanging, including: (1) testimony that the victim told[3] her mother and the responding police officers that Appellant tried to strangle her with a yellow nylon rope that was "hung over something," N.T. Trial, 8/22/17, at 33, 59, 63, 184; (2) testimony that Appellant only failed in this attempted hanging when the rope broke while the victim was being strangled, **id**. at 33; (3) testimony from multiple witnesses that a red ligature mark was visible around the victim's throat immediately after the attack, **id**. at 34, 96; (4) photographs of these same ligature marks, **id**. at 75-76, 95; and (5) the yellow nylon rope found in Appellant's apartment, **id**. at 68, 101.

Before this Court, Appellant does not dispute that the underlying attack took place, but argues that "[t]here was no risk of death or loss or impairment of a body organ" as a result of his assault of the victim.  Appellant's brief at

---

[3] The victim did not testify at trial, but her statements were admitted at trial under various hearsay exceptions.  Appellant has raised separate claims regarding the admission of this evidence that we will address *infra*.

32. In relevant part, he appears to suggest that an attempted strangulation that fails to kill the victim does not establish the necessary specific intent to cause serious bodily injury. However, our Supreme Court has held that the neck is a "vital part" of a person's body. *See Commonwealth v. Montalvo*, 956 A.2d 926, 933 (Pa. 2008). In this case, it seems that Appellant's use of the yellow nylon rope as a ligature upon the victim's neck also transformed that improvised implement into a "deadly weapon" under the circumstances. *See Commonwealth v. Rhoades*, 8 A.3d 912, 916 (Pa.Super. 2010) ("Items not normally considered deadly weapons can take on such status based upon their use under the circumstances.").

"[I]t is well-settled [that] the use of a deadly weapon on a vital part of the body is sufficient to establish a specific intent to kill." *Commonwealth v. Nichols*, 692 A.2d 181, 184-85 (Pa.Super. 1997). The trial court's discussion of the risk posed by strangulation is compelling on this point:

> The critically dangerous nature of strangulation on the neck is axiomatic, . . . because of the impact of crushing the airway and blocking off the flow of blood and oxygen to the brain . . . which is responsible for spontaneous respirations. Obviously[,] the carotid arteries which supply oxygen[-]rich blood from the heart to the brain are at grave risk in strangulation cases such as this . . . .

Trial Court Opinion, 10/10/18, at 24. As such, Appellant's use of the rope to strangle the victim violently enough to leave visible marks on her neck and produce palpable terror in her demeanor also permits an inference of specific intent to kill or cause serious physical injury. *See*, *e.g.*, *Commonwealth v.*

*Harvey*, 526 A.2d 330, 334 (Pa. 1987) (holding that "tightening a strap around a person's neck" with "force and violence" was indicative of specific intent); *see also*, *e.g.*, *Commonwealth v. Johnson*, 327 A.2d 124, 127 (Pa. 1974) (holding that "placing a knotted cord around the neck of an elderly woman and so rigging it as to strangle are consistent with" specific intent).[4] Based upon the reasoning above, we hold that Appellant's attempted strangulation-by-hanging permitted an inference of specific intent to cause serious bodily injury. As such, we hold that the Commonwealth presented sufficient evidence to sustain Appellant's conviction for aggravated assault.

Appellant has also challenged the sufficiency of the evidence underlying his conviction for persons not to possess firearms. *See* 18 Pa.C.S. § 6105(a)(1). Four guns were seized from Appellant's apartment, only one of which was found to be operable.[5] *See* N.T. Trial, 8/23/17, at 37-41. In relevant part, Appellant claims that: (1) the Commonwealth failed to sufficiently rebut a question raised at trial as to whether the at-issue guns are considered "antique firearms" pursuant to 18 Pa.C.S. § 6118(a) ("This

---

[4] We note that the holdings in both *Harvey* and *Johnson* relate to cases where the victims were actually killed via strangulation. We cite them for the limited proposition that in the context of ligature strangulation, an assailant's specific intent can be inferred from the manner of the assault.

[5] Appellant's argument suggests that only a firearm that is "operable" can trigger a conviction under § 6105. However, that requirement has been abrogated by statutory changes that took effect well before the events of this case transpired. *See Commonwealth v. Thomas*, 988 A.2d 669, 671 (Pa.Super. 2009) (citing 18 P.S. § 4628).

subchapter shall not apply to antique firearms."); and (2) failed to establish that Appellant "possessed" the at-issue firearms.

We note that Appellant introduced only his uncorroborated testimony to suggest that any of these guns fell under any of the relevant statutory definitions of "antique firearms." **See** 18 Pa.C.S. § 6118(c); **see also** N.T. Trial, 8/23/17, at 121-23. Pennsylvania case law suggests that a defendant carries the burden of proof in this arena. **See Commonwealth v. Wolfgang**, 97 A.3d 1274, 1280 n.8 (Pa.Cmwlth. 2014) (stating that a defendant must establish the applicability of § 6118(a) "in fact and in law").[6] Even assuming, *arguendo*, that Appellant **had** established that all of these guns were antique firearms, § 6118(a) does not apply "to the provisions of section 6105 (relating to persons not to possess, use, manufacture, control, sell or transfer firearms) if such antique firearms . . . are suitable for use." 18 Pa.C.S. § 6118(b) ("Exception."). Appellant was charged pursuant to § 6105(a), and the Commonwealth's expert testified that at least one of the seized guns was fully operational and suitable for use. As such, the exception applies and Appellant's claim on this point is unavailing.

Appellant's sufficiency argument regarding the element of possession is equally meritless, as Appellant admitted at trial to possessing **all** of the

---

[6] While "[t]his Court is not bound by the decisions of the Commonwealth Court," such decisions "provide persuasive authority, and we may turn to our colleagues on the Commonwealth Court for guidance when appropriate." **Petow v. Warehime**, 996 A.2d 1083, 1089 n.1 (Pa.Super. 2010).

firearms seized from his apartment. *See* N.T. Trial, 8/23/17, at 121-23. Therefore, no relief is due on this claim.

Appellant similarly challenges the sufficiency of his conviction for PWID, based upon the methamphetamine seized from his apartment. He asserts that the Commonwealth failed to establish that he: (1) possessed the narcotics seized from the apartment; and (2) with the necessary intent to "deliver." *See* Appellant's brief at 36-40.

The following additional legal principles will guide our review:

> Since the police did not find any narcotics on Appellant's person, the Commonwealth was required to prove that Appellant constructively possessed the [narcotics found at his apartment]. Constructive possession is the ability to exercise conscious control or dominion over the illegal substance and the intent to exercise that control. The intent to exercise conscious dominion can be inferred from the totality of the circumstances.

*Commonwealth v. Kirkland*, 831 A.2d 607, 610 (Pa.Super. 2003) (internal citations omitted).

Reviewing the totality of the circumstances as presented at trial, the Commonwealth adduced testimony that several individually packaged bags of methamphetamine were seized from various places in Appellant's apartment. *See* N.T. Trial, 8/22/17, at 83, 90. Appellant claims that the narcotics belonged to either the victim or a former housemate that moved out shortly before this controversy began, but Appellant's own testimony at trial indicates that the parties enjoyed joint control and equal access to the areas where drugs were discovered. *See* N.T. Trial, 8/23/17, at 203-04. As such, the jury

could have readily inferred that Appellant constructively possessed the at-issue narcotics. **See Commonwealth v. Mudrick**, 507 A.2d 1212, 1214 (Pa. 1986) (constructive possession of narcotics established where multiple parties lived in an apartment where narcotics were located and enjoyed "joint control over and equal access to the area" where narcotics were ultimately found). Appellant's argument on this point fails.

With respect to establishing Appellant's intent to deliver, the Commonwealth presented testimony that a digital scale, numerous plastic bags commonly used for packaging narcotics, and notebooks containing information on the manufacture of methamphetamine were seized from a locked drawer belonging to Appellant. **See** N.T. Trial, 8/22/17, at 90-92; **see also** N.T Trial, 8/23/17, at 203-06.

The Commonwealth presented expert testimony that: (1) confirmed that the various containers of a crystalline substance seized from Appellant's apartment were, in fact, methamphetamine, **see** N.T. Trial, 8/23/17, at 18-21; and (2) opined at length that the evidence seized from Appellant's apartment indicated his involvement in the regular distribution of methamphetamine, including the residue in empty bags, the packaging of the narcotics for sale, the presence of the digital scale, and the content of the notebooks that included specific instructions and notations regarding the manufacture and sale of methamphetamines. **Id**. at 58-83.

We also note that Appellant was in possession of at least one operable handgun at the time of his arrest. Furthermore, none of the drug paraphernalia seized from Appellant's apartment related to his personal use of methamphetamine as Appellant stated that he only personally used marijuana, which also leads to a reasonable inference that the methamphetamine was intended for distribution. *Id*. at 123-24.

In sum, Appellant's argument with respect to intent boils down to an assertion that the Commonwealth could not establish his intent to deliver without further evidence of "direct sales" actually carried out by Appellant. *See* Appellant's brief at 40. However, this Court has previously held that the Commonwealth may establish intent to deliver via entirely circumstantial evidence. *See Commonwealth v. Bricker*, 882 A.2d 1008, 1016 (Pa.Super. 2005). Overall, the evidence was sufficient for the jury to infer Appellant's intent to deliver narcotics, specifically methamphetamine. *See Commonwealth v. Ratsamy*, 934 A.2d 1233, 1237-38 (Pa. 2007) (holding that factors auguring in favor of a finding of intent to deliver include individualized packaging of the narcotics, the presence of unused baggies, expert testimony, the defendant's possession of a handgun, and the absence of drug paraphernalia related to personal use). No relief is due on this claim.

Appellant's fourth issue challenges the trial court's denial of his suppression motion, which requested the exclusion of evidence discovered and seized by the Marcus Hook Police Department during their protective sweep

and consent search of Appellant's apartment. *See* Appellant's brief at 17-29. Appellant has styled this inquiry as involving two separate questions: (1) whether the protective sweep carried out by law enforcement was legally valid; and (2) whether Appellant's consent to search was properly obtained. In addition to defending the validity of the protective sweep, the Commonwealth argues that Appellant's subsequent and voluntary consent to a search of his apartment renders the evidence admissible even if the protective sweep is invalidated. *See* Commonwealth brief at 17.

These claims necessarily implicate the rulings of the trial court on matters of suppression. The following legal principles will guide our review:

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Jones*, 121 A.3d 524, 526-27 (Pa.Super. 2015) (internal citations omitted).

The initial portion of Appellant's fourth claim concerns the alleged "protective sweep" conducted by the Marcus Hook Police Department incident to Appellant's arrest outside of his apartment. Appellant challenges the trial court's conclusion that "Officer Barnett and other officers rightfully conducted a protective sweep of [Appellant's] apartment to reduce any threat and secure what would be the focus of a criminal investigation." *See* Order, 1/23/17, at unnumbered 5. In this context, a "protective sweep" is "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Maryland v. Buie*, 494 U.S. 325, 327 (1990). Prior to issuing its ruling, the trial court held a suppression hearing at which Officer Barnett testified as to the events of that evening. *See* N.T. Suppression Hearing, 3/22/16, at 5-102.

It is not clear that the protective sweep in this case was supported by the factual circumstances, as the immediate danger to the victim had passed when officers took Appellant into custody. *See Commonwealth v. Wright*, 742 A.2d 661, 664-65 (Pa. 1999) (holding that police are not permitted to undertake a warrantless search following an incident of domestic violence where "the potential for imminent violence had been eliminated" and "there was no indication that the safety of others was threatened, evidence might be lost or destroyed, or police lacked the ability to maintain security at the premises pending the issuance of a search warrant"). Furthermore, the entrance to Appellant's apartment was located on the second story of the

building and accessible only via an iron staircase, which was not in close proximity to the immediate location of Appellant's arrest. **See Commonwealth v. Taylor**, 771 A.2d 1261, 1267-68 (Pa. 2001) ("Because the sweep in the present case extended beyond the area within the immediate vicinity of the arrest, there must be articulable facts which . . . would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger . . . .").

Instantly, there was no testimony adduced at the suppression hearing that could have established a reasonable belief that additional assailants may have been lying in wait for law enforcement once Appellant had been taken into custody. While the victim's warnings to law enforcement regarding Appellant's risk for violence were certainly sufficient to put officers on their guard, that threat dissipated completely with Appellant's peaceful surrender at the bottom of the staircase to his apartment.

Assuming, *arguendo*, that the at-issue protective sweep was not appropriate under the circumstances, Appellant's consent to search his apartment was nonetheless validly obtained by the Marcus Hook Police Department. This distinction ultimately renders the search and seizure of evidence from Appellant's apartment valid.[7] **See Commonwealth v. Reid**,

---

[7] This rationale differs from that relied upon by the trial court in its Rule 1925(a) opinion and the underlying ruling. "It is well[-]settled that where the result is correct, an appellate court may affirm a lower court's decision on any

811 A.2d 530, 543 (Pa. 2002) ("If the court finds that an illegal seizure preceded an alleged consent but the consent was not caused by the illegal seizure . . . , the court must then determine whether the prosecution has adequately proven that the consent was made voluntarily . . . ."). Instantly, there is no allegation that the protective sweep somehow "caused" Appellant to give his consent. To the contrary, the testimony presented by the Commonwealth at the suppression hearing uniformly indicates that police did not utilize any arguable "fruits" of its protective sweep in obtaining consent from Appellant.

Thus, the question is whether Appellant's consent was freely given. "In determining the validity of a given consent, the Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances." *Commonwealth v. Krenzel*, 209 A.3d 1024, 1028 (Pa.Super. 2019). While there is no "hard and fast list of factors" that are relevant to this determination, some considerations include: (1) the defendant's custodial status; (2) the use of duress or coercive tactics by law enforcement personnel; (3) the defendant's knowledge of his right to refuse to consent; (4) the defendant's education and intelligence; (5) the defendant's belief that no

___

ground without regard to the ground relied upon by the lower court itself." *Commonwealth v. Singletary*, 803 A.2d 769, 772-73 (Pa.Super. 2002).

incriminating evidence will be found; and (6) the extent and level of the defendant's cooperation with the law enforcement personnel. ***Id***.

Appellant has asserted that his consent was coerced, but his argument is threadbare. His only claims of duress are that: (1) he was taken into custody by multiple officers of the Marcus Hook Police Department and placed in handcuffs; (2) he was informed that police would seek a warrant if he refused his consent; and (3) he signed an allegedly incorrectly dated consent-to-search form. ***See*** Appellant's brief at 27-28.

The trial found these allegations insufficient to overcome the uncontroverted testimony at the suppression hearing that Appellant's consent was freely offered by way of cooperation with law enforcement. ***See*** N.T. Suppression Hearing, 3/22/16, at 24 ("[R]ight as we were reaching the car, he told us that he didn't want to give us a hard time, and that he would consent to a search."). There is no evidence that police attempted to coerce Appellant's consent, and simply being placed into custody does not qualify as *per se* duress for the purposes of assessing the voluntariness of consent. ***See U.S. v. Watson***, 423 U.S. 411, 423 (1976) ("[T]he fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search."). Furthermore, the mere fact that Appellant was informed that police would apply for a warrant is also of no moment. ***See Commonwealth v. Mack***, 796 A.2d 967, 971-72 (Pa. 2002) ("Although the police informed Appellant that they 'would have to get a warrant' if she refused her consent,

this accurate statement informed Appellant of the true nature of her predicament, . . . . [I]t is not a coercive tactic by the police.").

Overall, there is no indication of undue coercion by law enforcement. Because Appellant's consent was freely given and not connected to the earlier seizure of his apartment by the Marcus Hook Police Department, any arguable taint from the protective sweep is excused. *See Commonwealth v. Strickler*, 757 A.2d 884, 888-89 (Pa. 2000) (holding consent to search is validly given even if preceded by an illegal seizure so long as consent was not the product of that illegal seizure); *see also Reid*, *supra* at 547. Thus, no relief is due on Appellant's fourth issue.[8]

Appellant next raises a challenge to the weight of the evidence with respect to the same three offenses implicated by his sufficiency arguments. *See* Appellant's brief at 41-43. At the outset, we note that these claims were properly preserved in the trial court via a post-sentence motion. The following legal standards will govern our review:

> Appellate review of a weight claim **is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.** Because the trial judge has had the opportunity to hear and see the evidence

---

[8] Appellant has also included a claim that the police violated the scope of consent by opening a locked drawer in Appellant's apartment with a screwdriver during the search of Appellant's apartment. Appellant has waived this claim for failing to raise it before the trial court. Appellant's three separate suppression motions make no argument concerning an alleged violation of the scope of Appellant's consent and the issue was not raised at the suppression hearing. As such, it is waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (internal citations omitted, emphasis in original). In its Rule 1925(a) opinion, the trial court detailed the evidence adduced against Appellant and concluded that "[t]he weight of the evidence at trial overwhelmingly supported [Appellant's] convictions." Trial Court Opinion, 10/10/18, at 35.

Appellant's arguments are cursory and unpersuasive. Indeed, much of Appellant's discussion conflates the distinct issues of sufficiency and weight by reasserting arguments that concern whether the Commonwealth's evidence supported the underlying convictions. However, "a true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Commonwealth v. Morgan*, 913 A.2d 906, 909 (Pa.Super. 2006). "Accordingly, a weight of the evidence challenge contests the weight that is afforded the testimonial evidence." *Id.*

The only credibility arguments presented by Appellant concern minor chronological inconsistencies in the testimony of the police officers called at trial. *See* Appellant's brief at 42-43. However, mere conflicts in the testimony of the Commonwealth's witnesses do not serve to completely undermine the

weight of the evidence against Appellant, particularly where the jury has been provided with a fair opportunity to assess those inconsistencies and reach its own determination. **See Commonwealth v. Stiles**, 143 A.3d 968, 980-81 (Pa.Super. 2016) (rejecting arguments that a verdict is against the weight of the evidence based solely upon "various inconsistencies in the testimony and pretrial statements" of Commonwealth witnesses); **see also Commonwealth v. Home**, 89 A.3d 277, 285-86 (Pa.Super. 2014) (same). We discern no abuse of discretion by the trial court. As such, this claim fails.

Appellant's next issue addresses the respective testimonies of Officer Barnett and the victim's mother. Specifically, Appellant avers that the trial court erred in admitting hearsay testimony at trial from both individuals based upon the exception for "excited utterances" made by the victim immediately after Appellant's assault. **See** Appellant's brief at 43-49.

This claim arises pursuant to evidentiary rulings made by the trial court. In this context, "[a]ppellate courts review evidentiary decisions for an abuse of discretion." **Commonwealth v. Jacoby**, 170 A.3d 1065, 1090 (Pa. 2017). "An abuse of discretion is not merely an error in judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." **Id**.

Under the Pennsylvania Rules of Evidence, "hearsay" is defined as a statement that: (1) the declarant does not make while testifying at the current

trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement. *See* Pa.R.E. 801(c)(1)-(2). As a general rule, hearsay is not admissible under Pennsylvania law. *See* Pa.R.E. 802. However, there are a number of exceptions to this general maxim, including one for statements that qualify as an "excited utterance." *See* Pa.R.E. 803(2). For our purposes, an excited utterance is defined as "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." *Id*.

With reference to potential temporal issues surrounding this hearsay exception, an official comment to the Rules of Evidence explains as follows:

> [A]n excited utterance: (1) need not describe or explain the startling event or condition; it need only **relate** to it; and (2) need not be made contemporaneously with, or immediately after, the startling event. It is sufficient if the stress of excitement created by the startling event or condition persists as a substantial factor in provoking the utterance.
>
> There is no set time interval following a startling event or condition after which an utterance relating to it will be ineligible for exception to the hearsay rules as an excited utterance. In **Commonwealth v. Gore**, 396 A.2d 1302, 1305 (Pa.Super. 1978), the [Superior Court] explained:
>
>> The declaration need not be strictly contemporaneous with the existing cause, nor is there a definite and fixed time limit . . . . Rather, each case must be judged on its own facts, and a lapse of time of several hours has not negated the characterization of a statement as an "excited utterance." . . . The crucial question, regardless of the time lapse, is whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective processes remain in abeyance.

Official Comment to Pa.R.E. 803(2) (emphasis added).

The testimony adduced at trial indicated that the victim ran to her mother's house immediately after the assault, which is approximately one-half of one block away from Appellant's home. *See* N.T. Trial, 8/22/17, at 32-33. After responding to the victim's banging on her door, the victim's mother testified that she was "hysterical and crying." *Id*. at 32, 42. At this point, the victim spontaneously stated that Appellant had tried to "hang" or "strangle" her. *Id*. at 32-33. The police were summoned.

When he arrived at the scene minutes later, Officer Barnett's description of the victim is in parity with that of her mother. He also described her as "hysterical," but went into greater detail: "She was sobbing crying. Her face was bright red. She could barely catch her breath. She just kept shaking her hands like she didn't know what to do with herself, breathing heavy. She just looked in my experience terrified and upset." *Id*. at 57-58. In fact, the victim's level of agitation was so extreme that she was seen "running up and down the street" after the assault, *id*. at 41-42, and was pacing throughout her interactions with law enforcement. *Id*. at 57. Despite her agitated state, the victim managed to tell the police that Appellant had attempted to strangle her with a rope in response to questioning from police.[9] *Id*. at 59.

_____

[9] Appellant asserts that the fact that the victim's statement to police were made in response to "direct questioning" from the police. However, "[t]he weight of authority in this Commonwealth is that responses to questions are not, *per se*, excluded from consideration as excited utterances."

Based on this testimony, we find no abuse of discretion in the trial court's ruling that the assault was sufficiently "startling" to render these statements "excited utterances" within the meaning of Pennsylvania's hearsay jurisprudence. *See Commonwealth v. Barnyak*, 639 A.2d 40, 43-44 (Pa.Super. 1994) (holding that statements made by a "panic stricken" shooting victim at the hospital in response to police questioning were admissible under the "excited utterance" hearsay exception).

As the trial court further noted, these statements also appear to have occurred in close chronological proximity to the assault. Although there is not a definitive timeline, the testimony adduced at trial indicates that the events discussed above transpired in a mere matter of minutes. *See* N.T. Trial, 8/22/17, at 33, 36, 57 (establishing that the victim's mother called the police after her daughter's initial utterances, and that police responded to that call within two minutes). As such, we discern no abuse of discretion in the trial court's conclusion that these statements were also close enough in time to the assault to qualify as "excited utterances" for hearsay purposes. *See Commonwealth v. Hess*, 411 A.2d 830, 834 (Pa.Super. 1979) (collecting

---

*Commonwealth v. Sanford*, 580 A.2d 784, 789 (Pa.Super. 1990), *abrogated on separate grounds*, *Crawford v. Washington*, 541 U.S. 36 (2004). The mere fact that the victim's utterances were made in response to questions posed by law enforcement does not automatically remove it from this exception to hearsay. *Id*.

cases). Overall, we find no abuse of discretion in the trial court's ruling on this issue. Appellant is entitled to no relief on this claim.

Appellant has also raised a claim challenging other testimony from the victim's mother concerning a phone conversation she had with the victim immediately prior to trial. *Id*. at 49-51. The victim's mother testified that the victim told her that she was still "scared" of Appellant. *Id*. at 50. Appellant objected to this testimony on the basis of hearsay, and it was admitted pursuant to the "state of mind" exception. *Id*. at 49-51; *see also* Pa.R.E. 803(3) (providing that the rule against hearsay does not apply to "[a] statement of the declarant's then-existing state of mind . . . or emotional, sensory, or physical condition," including any "mental feeling").

Appellant essentially asserts that there was no legitimate reason for this testimony to be admitted. However, this Court has previously upheld the admission of such testimony under the state-of-mind exception where such evidence speaks to a relevant factor in the case. *See Commonwealth v. Luster*, 71 A.3d 1029, 1041 (Pa.Super. 2013) ("[H]earsay evidence concerning the victim's state of mind is admissible only where the victim's state of mind is a 'factor in issue' at trial."). Instantly, evidence of the victim's continuing fear of Appellant speaks to his ill will or malice, which is certainly relevant with respect to the charge of aggravated assault. *See Commonwealth v. Kunkle*, 79 A.3d 1173, 1185 (Pa.Super. 2013) ("[T]he victim's statements were admissible because they reflect Appellant's ill will

and malice toward the victim.") (citing *Commonwealth v. Luster*, 71 A.3d 1029, 1041 (Pa.Super. 2013)). Thus, no relief is due on this claim.

Appellant's penultimate issue involves allegations that the Commonwealth committed discovery violations under the framework provided by *Brady v. Maryland*, 373 U.S. 83 (1963) (holding that prosecution's suppression of evidence favorable to accused violates due process where evidence is material to guilt or punishment, irrespective of prosecution's good or bad faith). In particular, Appellant asserts that the Commonwealth committed *Brady* violations by allegedly suppressing: (1) videotape recordings of the police station on the evening of the assault; and (2) a full report from the lab technician that tested the narcotics in this case. *See* Appellant's brief at 51-54. The trial court found no *Brady* violation. We agree.

Our Supreme Court has discussed the legal standards attendant to this area of the law as follows: "To establish a *Brady* violation, a defendant must show: the prosecution suppressed the evidence, either willfully or inadvertently; the evidence is favorable to the defense; and the evidence is material." *Commonwealth v. Birdsong*, 24 A.3d 319, 327 (Pa. 2011) (cleaned up). We emphasize that a defendant bears the burden of establishing these elements by reference to the certified record. *See Commonwealth v. Paddy*, 15 A.3d 431, 451 (Pa. 2011).

Applying this rubric, it is clear that both of Appellant's claims are meritless. Beyond failing to discuss **any** of the relevant legal standards that

undergird our analysis of alleged *Brady* violations, Appellant has failed to establish any of the three required prongs. It is entirely unclear based upon Appellant's references to the factual record when (or if) the Commonwealth ever possessed these complained-of discovery materials. Furthermore, Appellant's arguments present only a mere possibility that these items **may** have provided the basis for "testing" the credibility of the Commonwealth's witnesses and their averments. *See* Appellant's brief at 53 ("The purpose of the discovery of the videos was to test the credibility of Officer Barnett."); *see also id*. at 54 (offering no favorability or materiality justifications regarding the technician's report). In sum, Appellant has failed to articulate how this evidence was either beneficial or material beyond pure conjecture. Such speculative arguments are insufficient:

> Evidence is only material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. **The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense.**

*Birdsong*, *supra* at 327 (emphasis added). No relief is due.

In his final claim, Appellant avers that the sentencing court erred in treating Appellant as a "third-strike offender" pursuant to 42 Pa.C.S. § 9714. This issue implicates the legality of Appellant's sentence. *See Commonwealth v. Edrington*, 780 A.2d 721, 723 (Pa.Super. 2001).

Consequently, "our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Melvin***, 172 A.3d 14, 19 (Pa.Super. 2017).

In pertinent part, the at-issue statutory provision provides as follows:

**(a) Mandatory sentence.**--

(1) Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. . . .

(2) Where the person had at the time of the commission of the current offense previously been convicted of two or more such crimes of violence arising from separate criminal transactions, the person shall be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. . . .

**(a.1) Mandatory maximum.**— An offender sentenced to a mandatory minimum sentence under this section shall be sentenced to a maximum sentence equal to twice the mandatory minimum sentence, notwithstanding 18 Pa.C.S. § 1103 (relating to sentence of imprisonment for felony) or any other provision of this title or other statute to the contrary.

. . . .

**(d) Proof at sentencing.**-- . . . . The sentencing court, prior to imposing sentence on an offender under subsection (a), shall have a complete record of the previous convictions of the offender . . . .

**(e) Authority of court in sentencing.**—There shall be no authority in any court to impose on an offender to which this section is applicable any lesser sentence than provide for in subsections (a) and (a.1) . . . .

42 Pa.C.S. § 9714. Under this framework, Appellant was sentenced to twenty-five to fifty years of imprisonment with respect to this conviction for aggravated assault. *See* Sentencing Order, 10/11/17, at ¶ 1.

Throughout his discussion of this issue, Appellant repeatedly asserts that the certified record does not adequately support a finding that the sentencing court complied with § 9714(d) by reviewing the "complete record" regarding Appellant's prior felony convictions. *See* Appellant's brief at 58-59 (citing *Commonwealth v. Norris*, 819 A.2d 568, 575-76 (Pa.Super. 2003) (remanding for resentencing where "it does not appear that the sentencing court had before it [the defendant's] complete record of prior convictions")).

Appellant's claim is both legally meritless and factually inaccurate. The Commonwealth provided the sentencing court with certified copies of the records regarding Appellant's predicate convictions under § 9714. *See* N.T. Sentencing, 10/4/17, at 3-5. These records, together with the testimony at the hearing, established that Appellant was convicted of multiple counts of burglary in 1997.[10] *Id*. at 3-15. After completing his term of imprisonment with respect to those charges and while still on probation, Appellant was convicted of aggravated assault in 2001. *Id*. Thus, we find Appellant's attempts to cast doubt upon the content of the certified record unavailing.

---

[10] In this claim, Appellant includes an allegation that the Commonwealth failed to establish that his prior convictions for burglary were "crimes of violence" under § 9714. This claim is waived as a result of Appellant's failure to include it in his Rule 1925(b) concise statement. *See* Pa.R.A.P. 1925(b)(4)(vii).

With respect to the remainder of Appellant's argument, we discern that Appellant is arguing that his prior felony convictions were too close-in-time to one another to permit the trial court to treat them as first-strike and second-strike offenses, respectively. According to Appellant, such treatment violates the "recidivist philosophy" underlying § 9714 as identified by our Supreme Court in *Commonwealth v. McClintic*, 909 A.2d 1241, 1249 (Pa. 2006) ("[E]ach strike that serves as a predicate offense must be followed by sentencing and, by necessary implication, an opportunity for reform, before the offender commits the next strike.").

Appellant's reliance upon this case law is misplaced. The holding in *McClintic* involved a situation where the Commonwealth attempted to utilize multiple crimes from the "same criminal episode" to serve as "separate sentence enhancements" under § 9714. Instantly, all of Appellant's underlying felony convictions related to distinct, prior criminal episodes. Contrary to Appellant's arguments, he had ample years between his respective 1997 convictions for burglary, his 2001 conviction for aggravated assault, and his 2017 conviction for aggravated assault in which to seize an "opportunity for reform." He declined to do so, to his detriment. No relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/23/20